UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONNA CRAIG,

        Plaintiff,

v.

BRIDGES BROS. TRUCKING LLC, et al.,

        Defendants.

Case No. 2:12-cv-954
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion to Dismiss. (ECF No. 5.) For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

### I.

The following facts are taken from the complaint. Defendant Bridges' Bros. Trucking LLC operates a trucking company in Gahanna, Ohio. Defendant Michael Bridges is its owner. Bridges Bros. Trucking employed Plaintiff Donna Craig as a bookkeeper. She was discharged from that position on August 23, 2012.

Plaintiff was an hourly employee and would at times work more than forty hours per week. Defendants usually paid overtime at the same rate as Plaintiff's standard compensation, but occasionally paid 1.5 times her regular rate. On approximately June 25, 2012, Plaintiff informed Defendant Bridges he was required to pay her 1.5 times her hourly rate for overtime work.

In June or July 2012, the Ohio Department of Job and Family Services ("ODJFS")

notified Defendants of an employee audit for 2010 and 2011. Defendants contacted their accountant, Chris Winch, to prepare for the audit, in part, Plaintiff alleges, because the Company had been paying mechanics "under-the-table" from a separate bank account that was not reported for taxation. Compl. ¶ 31. Accountant Winch sent an email to Plaintiff regarding the audit, which stated in part:

> What you might want to do here is have [Defendant Bridges] prepare a reimbursement worksheet for each payment and change the name on the payment to his name and just say that he was paying the repair bills himself. We would need to include the repair invoice which would have the person or company on there but at least it wouldn't show a check coming from Bridges Brothers so we could argue that the repair guys didn't receive funds directly from Bridges Brother which is why we did not W-2 or 1099 them. This would also get the names off the master vendor list they are asking for.

*Id.* ¶ 33.

On July 23, 2012, Plaintiff responded by email, indicating that "altering or falsifying the mechanic's pay records as suggested would constitute fraud and that she would not participate." *Id.* ¶ 35. On July 24, 2012, Accountant Winch, Defendant Bridges, and Plaintiff met to discuss the audit. Plaintiff and Accountant Winch disagreed over whether altering the records constituted fraud. Plaintiff informed Accountant Winch and Defendant Bridges that she would not alter any records.

The following day, July 25, 2012, Plaintiff alleges that Defendants posted an advertisement for her position on Craigslist.

On August 10, 2012, Accountant Winch and Defendant Bridges met to discuss the ODJFS audit. After the meeting, Winch and Bridges informed Plaintiff that she would not be permitted to come to work on August 14, 2012, the day of the audit.

2

On August 22, 2012, Plaintiff discovered a printed letter terminating her on a shared office printer. On August 23, 2012, Defendant Bridges signed the letter and terminated Plaintiff's employment.

On October 16, 2012, Plaintiff filed the instant action alleging that Defendants' illegally retaliated against her and wrongfully terminated her in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Constitution, the Ohio Minimum Fair Wage Standards Act ("MWSA"), Ohio Rev. Code § 4111.01, *et. seq.*, and Ohio public policy. Plaintiff also alleges that Defendants' willfully failed to pay her overtime compensation as required by the FLSA, the Ohio Constitution, and the MWSA.

On December 14, 2012, Defendants moved to dismiss two of the seven claims for relief Plaintiff alleges. That motion is ripe for review.

## II.

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in it as true, and determine whether the factual allegations present any plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–5570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted).

3

## III.

Defendants seek dismissal of Plaintiff's claim for failure to maintain accurate pay records in violation of Article II, § 34a of the Ohio Constitution and her claim for unlawful termination in violation of the public policy of Ohio.

### A. Violation of Article II, § 34a of the Ohio Constitution

Defendants assert that Article II, § 34a, the State Minimum Wage, of the Ohio Constitution does not provide a private cause of action for failure to maintain records and that even if did, Plaintiff has failed to allege "sufficient facts to establish a violation of the recordkeeping requirements." (Mot. to Dismiss at 4.) This Court disagrees.

#### 1. Private cause of action

Article II, § 34a of the Ohio Constitution provides:

An action for equitable and monetary relief may be brought against an employer by the *attorney general and/or an employee or person acting on behalf of an employee* . . . for any violation of this section . . . .

(emphasis added). The provision expressly provides the right for an employee to bring an action for violation of the section.

Defendants, however, argue that regardless of this express provision, this Court has previously held that ""Ohio law does not provide for a civil cause of action for failure to maintain or falsification of records." *Millington v. Morrow Cty. Bd. Of Commissioners*, 2007 U.S. Dist. LEXIS at *34-35 (S.D. Ohio Oct. 4, 2007) (citing *DeMell v. Cleveland Clinic Foundation*, 2007 Ohio 2924 (Ohio App. 2007)). The Northern District of Ohio addressed this issue in *Frisby v. Keith D. Weiner & Associates Co.*, LPA, 669 F. Supp. 2d 863, 869 (N.D. Ohio 2009), and distinguished *Millington* in an analysis this Court finds persuasive.

4

The *Frisby* plaintiff alleged that her employer "'knowingly and wilfully failed to make, keep and preserve records of the hours worked by Frisby, in violation of the [Minimum Wage Standards Act] and the Ohio Constitution.'" *Id.* at 868 (citing complaint) (alteration in original). The defendants relied upon *Millington*, in which the court granted summary judgment to an employer on a former employee's claims that, *inter alia*, it failed to keep overtime records in violation of the FLSA and the MWSA. The *Frisby* court explained that *Millington* "provid[ed] no discussion of the implications of [A]rt. II, § 34a, . . . [and] cited to only two Ohio cases that simply do not consider the existence of a private right of action." *Id.* at 869. Indeed, *Millington* did not even mention the Ohio Constitution.

Consequently, this Court finds that the express grant of a private cause of action found in Article II, § 34a of the Ohio Constitution controls this issue. Accordingly, Plaintiff has stated a plausible claim for relief for violation of § 34a.

### 2. Facts alleged

The Ohio Constitution requires that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const., Art. II, Sec. 34a. Plaintiff alleges that Defendants asked her to violate this provision by "altering or destroying" pay records, and that when she refused she was terminated. Compl. ¶ 63.

Defendants contend that Plaintiff's allegations are "mere legal conclusions" and "fail to establish that Defendants failed to maintain the required records or that Plaintiff was instructed to alter or destroy records required to be maintained by the Constitution." (Mot. to Dismiss at 6.) Defendants further argue that Plaintiff does not allege that she has any knowledge of the purpose

5

of the audit or that the audit involved questions regarding minimum payment compliance, that the email from Accountant Winch "does not on its face instruct Plaintiff to fail to maintain minimum wage records or to destroy them . . . [and] [a]t most, the Court can infer from the Complaint that Defendants paid mechanics as non-employee contractors and that Plaintiff believed that was inappropriate." *Id.* Defendants' arguments are not well taken.

As Plaintiff points out in her memorandum in opposition, neither the purpose of the ODJFS audit nor the audit itself form the basis of her claim. Her claim is that Defendants asked her to destroy pay records that Ohio requires be kept, she refused, and she was punished for her refusal. Further, inferring that Accountant Winch's email suggests illegally altering pay records is not unreasonable, as Defendants suggest. Accountant Winch suggests changing the names on a worksheet prepared for an audit, attaching invoices to back up the changes so that, although a check had been paid, "at least it wouldn't show a check coming from Bridges Brothers so [Defendants] could argue that the repair guys didn't receive funds directly from Bridges Brothers," and removing the individual workers' names from a master vendor list, from which pay records would presumably be taken. Compl. ¶ 33. What Defendants actually did with the pay records, whether those records were for employees or "non-employees," and whether Accountant Winch and Defendant Bridges altered or destroyed the records are not appropriately determined at this juncture.

Instead, this Court is tasked with determining whether, taking the well pleaded facts as true, and drawing all reasonable inferences in Plaintiff's favor, she alleged a plausible claim for relief. Under this standard, Plaintiff has sufficiently alleged that Defendants' requested her to violate § 34a's requirement that certain pay records be accurately kept.

6

### 3. Conclusion - Violation of Article II, § 34a of the Ohio Constitution

Based on the foregoing, the Court concludes that Plaintiff has alleged a plausible claim for relief under Article II, § 34a of the Ohio Constitution. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as it relates to this claim.

### B. Termination in Violation of Ohio Public Policy

Plaintiff alleges that Defendants wrongfully discharged her in violation of public policy for her refusal to alter or destroy payment or employment records. "In order to establish a claim under Ohio law for wrongful discharge in violation of public policy, a plaintiff must prove the following four elements: (1) a clear public policy manifested in a statute, regulation or the common law (the clarity element); (2) that discharging an employee under circumstances like those involved would jeopardize the policy (the jeopardy element); (3) that the discharge at issue was motivated by conduct related to the policy (the causation element); and (4) that there was no overriding business justification for the discharge (the overriding justification element). *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 151 (Ohio 1997); *Collins v. Rizkana*, 73 Ohio St. 3d 65, 69–70 (Ohio 1995)).

Defendants argue that Plaintiff's allegations fail to state a claim upon which relief can be granted because Ohio courts have repeatedly rejected wrongful discharge claims asserted on this basis. This Court agrees.

In *White v. Sears, Roebuck & Co.* 163 Ohio App. 3d 416 (10th Dist. 2005), the plaintiff alleged that there was a public policy requiring employers to "maintain accurate time records" and that his discharge violated that policy. The Tenth District Court of Appeals agreed that such a policy existed as reflected in the FLSA and MWSA. *Id.* at 423 ("Accordingly, given the

7

MWSA's and the FLSA's statutory and administrative provisions, we conclude that both Ohio and federal law manifest a clear public policy requiring employers to maintain accurate employee time records."). In analyzing the jeopardy element, the court explained that it "must inquire 'into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim.'" *Id.* at 424 (citing *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240 (2002)). "If a statutory remedy that adequately protects society's interest already exists, then there is no need to recognize a claim for wrongful discharge in violation of public policy." *Id.* The appellate court explained that, "for example, a plaintiff fired for protesting accounting irregularities, who can establish a clear public policy in favor of accuracy in corporate record keeping, must also establish that the other means for promoting the policy, such as regulatory requirements for audits, criminal penalties, and rights of shareholders and creditors to maintain private civil actions, are inadequate." *Id.* at 424.

The *White* court determined that "the MSWA and the FLSA contain alternative means for promoting the clear public policy requiring employers to maintain accurate employee time records." *Id.* at 425. Therefore, the court affirmed the trial court's dismissal of the plaintiff's claim for wrongful discharge in violation of public policy claim for failure to allege plausible facts to satisfy the jeopardy element. *Id.*

Likewise, in this case, the Court concludes that Plaintiff has failed to state a plausible claim for wrongful discharge in violation of public policy. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to this claim.

8

## IV.

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 5.) Specifically, the Court **GRANTS** the motion as it relates to Plaintiff's claim for wrongful termination in violation of public policy and **DENIES** the motion as it relates to Plantiff's claim under Article II, § 34a of the Ohio Constitution.

**IT IS SO ORDERED.**

<u>  8-6-2013  </u>
**DATE**

                                              **EDMUND A. SARGUS, JR.**
                                              **UNITED STATES DISTRICT JUDGE**