```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Donna Craig,                       :

       Plaintiff,              :     Case No. 2:12-cv-954

   v.                              :
                                         JUDGE EDMUND A. SARGUS, JR.
Bridges Bros. Trucking LLC,
et al.,                            :     Magistrate Judge Kemp

       Defendants.             :

## OPINION AND ORDER

Plaintiff, Donna Craig, brought this employment action against her former employer Bridges Bros. Trucking L.L.C. ("Bridges Bros.") and its owner, Michael Bridges, under federal and state law. Before the Court is Plaintiff's Motion to Compel Discovery and for Sanctions. (Doc. 25). This motion has been fully briefed. For the following reasons, the motion will be granted in part and denied in part.

### I. Background

The facts and allegations set forth below are included because of their relevance to the discovery requests at issue here. Unless otherwise noted, the following facts are uncontested. Bridges Bros. is a trucking company in central Ohio. Ms. Craig worked for Bridges Bros. as an office worker and bookkeeper from approximately October 25, 2010 until she was terminated on August 23, 2012. Mr. Bridges is the owner of Bridges Bros. His son, Michael A. Bridges, is not a defendant in this lawsuit, but he is the operations manager for Bridges Bros., and his actions are relevant to the dispute before the Court. The younger Mr. Bridges testified in his deposition that "Junior" is not in his name and he tries not to be referred to as "Junior," although people do refer to him sometimes as Junior. Accordingly, for purposes of clarity, the Court will refer to

Defendant Michael Bridges as "Mr. Bridges" and his son as "the younger Mr. Bridges."

Ms. Craig alleges that a month or two before she was terminated, the Ohio Department of Job and Family Services ("ODJFS") notified Defendants that ODJFS intended to conduct an unemployment audit for 2010 and 2011.  Defendants notified their accountant, Chris Winch, of the pending audit, and he sent an email to Mr. Bridges and Ms. Craig with a list of items to prepare for the pending audit, which included the following language:

> What you might want to do here is have Mike [Bridges] prepare a reimbursement worksheet for each payment and change the name on the payments to his name and just say that he was paying the repair bills himself.  We would need to include the repair invoice which would have the person or company on there but at least it wouldn't show a check coming from Bridges Brothers so we could argue that the repair guys didn't receive funds directly from Bridges Brothers which is why we did not W-2 or 1099 them. This would also get the names off of the master vendor list they are asking for.

(Compl. & Answer (Docs. 1 & 13) at ¶¶ 32-33).  This portion of the email referred to payments to certain independent contractors, including one named Jeff Jack, who were paid out of the personal account of the younger Mr. Bridges.  On July 23, 2012, Ms. Craig responded to the email indicating that she was concerned that Mr. Winch's suggestion would constitute fraud. Mr. Winch suggested that Ms. Craig and Mr. Bridges meet with him the following morning to discuss the upcoming audit.  (Compl. & Answer (Docs. 1 & 13) at ¶¶ 35-36).  Ms. Craig attended the meeting on July 24, 2012, again stated her concern that Mr. Winch's suggestion would constitute fraud, and stated that she would not participate.  (Compl. & Answer (Docs. 1 & 13) at ¶ 38).

Some time in the days following the meeting, Bridges Bros. posted an advertisement for a bookkeeper position.  On August 23,

2012, Bridges Bros. terminated Ms. Craig.  Mr. Bridges, as a Rule 30(b)(6) representative for Bridges Bros., testified that he took Ms. Craig's actions during the meeting into account when he terminated her.  (Doc. 24-2 at 24:5-28:18).  The parties dispute whether Mr. Winch's suggestion actually constituted fraud or not.  This dispute is relevant to Ms. Craig's claim for Unlawful Termination (Count V).

The depositions revealed that Defendants used atypical accounting practices.  Mr. Winch, also designated as a Rule 30(b)(6) representative for Bridges Bros., testified that around the time of the summer 2012 audit, Bridges Bros.'s financial information was being accounted for in the same QuickBooks file as several other companies that the Bridges family owned either individually or together.  (Doc. 24-3 at 15:11-17:11).  Specifically, Bridges Bros.'s finances were being reported commingled with two other companies, BridgeCO LLC ("BridgeCO") and Bridges Hauling, L.L.C. ("Bridges Hauling").  (Doc. 24-3 at 16:7-17:11; 29:21-32:15).  Mr. Winch also testified that there were personal accounts included in the same QuickBooks file.  (Doc. 24-3 at 32:16-33:1).  He described the QuickBooks file as follows:

> A. . . . The way the process was set up was that Mike Junior [the younger Mr. Bridges] was the owner of Bridges Hauling.  At times, Bridges Hauling could pay any expense for, you know, another company in error or as a normal operating procedure.  In normal practice, you would have separate QuickBooks files for each company.  When a transaction like that happens, you record it on each book, as like a [due to/ due from] kind of Scenario.  In that instance, the company that actually paid the bill would then invoice the other company, and then that company would pay the company that actually paid it.  In our instance, that's not what was happening.
> Q. What was happening?
> A. Because the funds were commingled, the funds that were leaving one company would not go through like a

> [due to / due from] account and it would just be posted to the other company's books, in essence, doing a one-sided entry for each company, which is not common practice.

(Doc. 24-3 at 36:10-37:6 & errata at Doc. 30-2).  In addition, Mr. Bridges, when testifying as a 30(b)(6) representative, testified about the payments that were made from his son's personal account to the independent contractors who were doing work for Bridges Bros., among other companies, and said, "the checks are actually written off my son's personal account, not the company account.  So it had nothing to do with our company." (Doc. 24-2 at 19:8-11).  He testified that the purpose of that payment arrangement was because he didn't want Bridges Bros. to have to employ the independent contractors.  (Doc. 24-4 at 31:12-32:12).

Ms. Craig filed this lawsuit on October 16, 2012, seeking declaratory, injunctive, and monetary relief, including, among other types of monetary relief, punitive damages.  Approximately two months later, on December 11, 2012, the following two companies were formed, naming Mr. Bridges as the statutory agent:

- 1120 Rarig Ave. Building, L.L.C. was formed with a stated purpose of "Real Estate Commercial Renting," and

- M & B Enterprise Leasing Company, L.L.C. was formed with a stated purpose of "Leasing Capital Equipment."

(Doc. 25-3).

The document requests at issue were part of Plaintiff's first set of discovery requests, which were served on August 28, 2013.  Those requests are the following:

Request 12:   Please produce all documents related to how Defendants paid the mechanics/workers described in paragraph 31 of Plaintiff's Complaint.  Include all payroll records, cancelled checks, records of hours worked, etc.

Request 33:   Please produce documentation related to Defendant

-4-

```
                    Bridges Bros. Trucking profit/loss and/or income
                    from 2009 through present.

Request 34:         Produce any and all 1099's and/or W-2's, whether
                    original or corrected, provided to employees
                    and/or contractors from 2005 through 2012.
```

(Doc. 25-5). Defendants provided their initial responses and objections to these document requests on October 29, 2013. The parties had a series of exchanges, several not related to the requests at issue here, and ultimately narrowed their discovery disputes to the ones brought before the Court in this motion to compel. To the extent that specific communications are relevant, they are discussed below in the context of the requests at issue.

## II. Analysis

While there are various document requests and supplemental requests implicated by the motion to compel, all of the requests address only two topics. The first topic involves the compensation of certain workers that Ms. Craig alleges were paid under the table. The second topic involves the financial health of Bridges Bros. and certain other companies. The Court will look to each topic in turn.

Ms. Craig has noted that her motion was filed out of time, but Defendants are not contesting the timeliness of the motion. (Doc. 30 at 9 n.7). The Court has discretion to decide whether or not to deem a motion to compel untimely. Suntrust Bank v. Blue Water Fiber, L.P., 210 F.R.D. 196, 201 (E.D. Mich. 2002) ("Fed. R. Civ. P. 37, which deals with discovery, provides no deadline for filing of a motion to compel. Fed.R.Civ.P 16(b) authorizes the judge or magistrate to make scheduling and planning orders," and modify them for good cause). Here the efforts of the parties to resolve matters on their own constitute good cause for permitting Ms. Craig to file this motion fifteen days after the close of discovery. The Court will treat this

motion as timely.

### A. Compensation Records

Ms. Craig first seeks the compensation records of certain workers that Ms. Craig alleges were paid under the table. Specifically, in Request Numbers 12 and 34, Ms. Craig has sought documents from 2005 through 2012 related to how Defendants paid the mechanics/workers who could have been the subject of the unemployment audit for 2010 and 2011, how much they were paid, and who paid them. Defendants' current position, as the Court understands it, is that they would theoretically be willing to produce compensation records relating to one such worker, Jeff Jack, who was an independent contractor and was ultimately the subject of the 2012 ODJFS unemployment audit. However, they contend that in order to get these documents, Ms. Craig would have to serve a subpoena on the younger Mr. Bridges because Mr. Jack was paid from his personal account. (Doc. 30 at 8).

The Court considers first whether Defendants correctly objected to producing the compensation records of Mr. Jack without a subpoena to the younger Mr. Bridges. Rule 34 of the Federal Rules of Civil Procedure states that a party may serve a request to produce documents or items "in the responding party's possession, custody or control." Fed. R. Civ. P. 34(a). Federal courts "have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) (citations omitted).

Since approximately 2011, the younger Mr. Bridges has been an employee of Defendant Bridges Bros. with the title of "Operations Manager." (Doc. 24-5 at 10:19-12:4). During the time period when Ms. Craig was working for Bridges Bros., he paid

Mr. Jack and two other contractors out of his own personal account for work that those individuals performed for Bridges Bros. and at least one other company, and he was reimbursed by the company for which the work was done.  (Doc. 24-5 at 22:23-32:15).  The younger Mr. Bridges testified that his father was a signer on his account and that he and his father both wrote checks to Mr. Jack, with his father having written most of the checks to Mr. Jack.  All of the checks to Mr. Jack were drawn on the personal account of the younger Mr. Bridges.  (Doc. 24-5 at 72:8-73:11).

    Given these facts, it seems clear that Bridges Bros. has a principal-agent relationship with the younger Mr. Bridges through which either Mr. Bridges agreed to make payments on behalf of Bridges Bros. which would then be reimbursed by Bridges Bros.  And, in fact, Mr. Bridges testified that at the time that Bridges Bros. was notified of the upcoming audit, his son's personal account was included among Bridges Bros.' account information in such a way that it appeared to be a part of Bridges Bros.'s accounts.  (Doc. 24-4 at 24:17-28:24).  While Bridges Bros. may not include that account among its accounts now, the evidence indicates that Bridges Bros. actually possessed documents relating to that account at the time when Ms. Craig was employed for the company.  Furthermore, regardless of actual possession, the younger Mr. Bridges was acting as an agent of Bridges Bros., and Defendant Mr. Bridges, as a signatory on his son's account, has control over the documents at issue.  Defendants' objection is based entirely on account ownership, but the law does not define possession, custody, or control so narrowly.  In addition, Bridges Bros.' records relating to the payments it made to reimburse the younger Mr. Bridges would be in its possession, custody, and control, and responsive to the document requests.  Accordingly, Defendants were wrong to insist that Ms. Craig serve

a subpoena on the younger Mr. Bridges in order to obtain the compensation records for Mr. Jack.  Defendants shall produce those records.

The next question is whether Defendants properly objected to producing compensation records of workers other than Mr. Jack.  That question goes to relevance.  Mr. Winch, as the corporate designee on certain topics, testified that Mr. Bridges had received a general audit letter from ODJFS and forwarded it to Mr. Winch, and that Defendants did not learn until later that ODJFS was investigating only the benefits provided to Mr. Jack. (Doc. 24-3 at 12:17-15:1).  Although there is no testimony regarding the date upon which Defendants learned that ODJFS was specifically looking at Mr. Jack's benefits, it appears undisputed that it followed the exchanges between Ms. Craig and Defendants regarding whether certain actions would constitute fraud.  For purposes of determining whether Mr. Winch's suggestions would have actually constituted fraud and whether Ms. Craig was terminated unlawfully, the state of mind of the parties is relevant, but the state of mind of ODJFS is not.  There is no rational basis for limiting discovery of compensation documents to Mr. Jack.

Defendants also argue briefly that Request Number 12 refers to a paragraph in the Complaint that is untrue and therefore the Request is fatally flawed.  The Court finds that argument to be without merit.  Relevance, for discovery purposes, is judged with reference to the parties' claims and defenses, <u>see</u> Fed. R. Civ. P. 26(b)(1), whether or not those claims ultimately turn out to be true.  Consequently, Ms. Craig's motion will be granted and Defendants will be directed to respond to Request Number 12 and also to Request Number 34 insofar as that request relates to the independent contractors.

B.  <u>Financial Records of Companies</u>

The second topic is the financial health of Bridges Bros. and certain other companies.  Ms. Craig requested documentation related to the profit/loss and income for Defendant Bridges Bros. in Document Request Number 33.  She states that this information is relevant for purposes of punitive damages.  (Doc. 25 at 15). This request did not seek documents from other companies, but Ms. Craig requested financial documents from two other companies at the end of the deposition of the younger Mr. Bridges.  The Court will consider the new request first before turning to Request Number 33.

At the end of the deposition at which the younger Mr. Bridges testified, counsel for Ms. Craig requested financial information from two companies that were formed after the litigation started: M&B Enterprise Leasing Company, L.L.C. and 1120 Rarig Ave. Building, L.L.C.  (Doc. 24-5 at 75:23-76:21). Because that request was outside of the scope of Request Number 33, it was not merely a request for supplementation, but rather was a new discovery request.  In the absence of a formal discovery request made in accordance with the Rules of Civil Procedure, the Court cannot compel the production of any information.  However, Ms. Craig may seek to serve formal discovery in accordance with the Rules (likely a subpoena). Before doing so, she should determine if there is an objection on the grounds of timeliness or any other basis.  If the parties are unable to resolve that issue without court involvement, they should contact the Court.

Turning to the Documents Request that was propounded in accordance with the Rules, Ms. Craig sought documents relating to Bridges Bros.' financial health.  Defendants have provided redacted 2012 and 2013 profit and loss statements and balance sheets.  (Doc. 25-19).  Ms. Craig asks the Court to order

Defendants to provide full, unredacted financial records responsive to Request 33 as well as tax returns.  Ms. Craig does not appear to dispute Defendants' assertion that only the records for 2012 and 2013 are relevant, and the case law supports this position.  <u>See, e.g.</u>, <u>In re Heparin Prods. Liab. Lit.</u>, 273 F.R.D. 399, 409-10 (reviewing cases and concluding that "[m]ost courts addressing the proper scope of financial discovery have limited such discovery to the period providing a picture of the defendant's current financial condition and net worth, usually the most recent year or two,") <u>cited in</u> <u>In re E.I. du Pont de Nemours & Co.</u>, 2:13-MD-2433, 2014 WL 1653158, *6 (S.D. Ohio Apr. 24, 2014) (citations omitted).  The two disputes relating to this document request are whether Defendants should be required to provide unredacted financials and whether they should also be required to produce tax returns.

Ms. Craig's original request sought "documentation related to Defendant Bridges Bros. Trucking profit/loss and/or income from 2009 through present."  Defendants responded that the request "seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence." (Doc. 25-25 at 25).  On February 12, 2014, Plaintiffs asked for documents responsive to Request 33 from 2011 to present. (Doc. 25-9).  The parties corresponded back and forth with Ms. Craig stating that Defendants need to produce balance sheets and profit and loss statements, and Defendants ultimately agreeing to produce redacted balance sheets and profit and loss statements from 2012 and 2013.  (Docs. 25-10, 30-1 at 6, 25-14, 25-16, 25-15, 25-17, 25-18).  Ms. Craig did not agree that the redacted documents would suffice, but rather agreed to review them to see if they would provide sufficient information. (Doc. 25-18).  Defendants produced those documents, and the supplemental production was identified as BRIDGES001019-1026. (Doc. 25-19).  Ms. Craig

-10-

questioned the corporate designee for Bridges Bros., Mr. Winch, about the supplemental production beginning at page 79 of his 30(b)(6) deposition. During his questioning, Mr. Winch testified on behalf of Bridges Bros. that at least one of the redactions should not have been made and that the document would make sense if it had not been redacted. (Doc. 24-3 at 87:16-88:14). He testified about what he assumed that number should be, but Ms. Craig is certainly entitled to see that number without the redaction. While that erroneous redaction does not necessarily mean that all of the redactions were problematic, there is no indication that Defendants have corrected that erroneous redaction.

Defendants argue that Ms. Craig did not ask for Defendants to supplement their production until the day after the close of discovery, April 1, 2014, when counsel for Ms. Craig sent a letter via email asking Defendants to supplement certain requests, including Request Number 33. (Doc. 30 at 6 n.4 (citing doc. 30-1 at ¶9, which should be ¶7)). In that letter, with respect to Bridges Bros., counsel for Ms. Craig only requested unredacted versions of the documents already produced and did not also request tax returns. (Doc. 25-23). It was not until the filing of the motion to compel that Ms. Craig asked for tax returns as well. While, Defendants' argument regarding timeliness has some appeal in that it would have been preferable for Ms. Craig to exercise more diligence, it does not take into account the requirements of Rule 26(e)(1). That Rule requires supplementation of productions in response to document requests:

> (1) In General. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some

>material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
>(B) as ordered by the court.

Fed. R. Civ. P. 26(e). While Defendants might have concluded that Mr. Winch's testimony as to what he assumed was the number that was erroneously redacted satisfied the requirement that the corrective information be made known to Ms. Craig, he did not testify to personal knowledge of the number, and his testimony did not suffice. Accordingly, as neither party was particularly diligent with respect to their obligations regarding the response to Request Number 33, the Court will consider the substance of Ms. Craig's motion as to that Request.

In response to similar requests, courts have determined that the following types of documents are discoverable: "financial reports, information relating to net worth, tax returns, balance sheets, and revenue or earnings projections/results." In re E.I. du Pont de Nemours & Co., 2014 WL 1653158, *6 (citing In re Heparin Prods. Liab. Lit., 273 F.R.D. 399, 409-10). In light of the relevance of the documents, Defendants' uncorrected and admitted error in redacting, and the absence of any valid objection to producing unredacted versions of the documents, the Court concludes that Defendants should produce unredacted versions of Bridges Bros.'s 2012 and 2013 profit and loss statements and balance sheets.

Because there is no indication that Ms. Craig provided Defendants with the opportunity to meet and confer with respect to the tax returns before filing her motion to compel, the Court will not order the production of those documents at this time.

C. <u>Remaining Matters</u>

Ms. Craig has generally requested the opportunity to conduct follow-up discovery on these issues to the extent it is necessary. The Court cannot grant that motion at this time as the request will depend upon what the discovery reveals, as well as the timing of the requests and whether she has been diligent in pursuing the information sought.

Ms. Craig has also requested that the Court permit her to supplement her response to the motion for summary judgment that Defendants filed. That request is granted.

Lastly, Ms. Craig seeks sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(ii). That section of Rule 37 provides that the Court may, on motion, order sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Ms. Craig correctly notes that evasive or incomplete responses must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4). Here, the Court finds that Defendants' opposition to the motion was substantially justified. Ms. Craig's motion for sanctions will therefore be denied.

III. <u>Order</u>

For these reasons, Plaintiff's Motion to Compel Discovery and for Sanctions is granted in part and denied in part as follows.

It is granted as to Request Number 12 and also to Request Number 34 insofar as that request relates to the independent contractors. Defendants shall produce such documents within 14 days of the date of this Order.

It is granted as to Plaintiff's request that Defendants supplement Request Number 33 with unredacted versions of Bridges Bros.'s 2012 and 2013 profit and loss statements and balance

sheets. Defendants shall produce such documents within 14 days of the date of this Order.

Plaintiff's motion is also granted insofar as Plaintiff seeks to supplement her response to the motion for summary judgment. Any such supplemental brief shall be filed within 28 days of the date of this Order. Defendants may file a responsive supplemental brief within 14 days thereafter.

Plaintiff's motion is denied as to Ms. Craig's informal request for financial documents relating to M&B Enterprise Leasing Company, L.L.C. and 1120 Rarig Ave. Building, L.L.C., although this denial is without prejudice to any motions relating to formal discovery served on the same topic.

It is further denied as to Plaintiff's request to supplement Request Number 33 with Bridges Bros.' tax returns.

In addition, Plaintiff's motion for sanctions is denied.

### IV. Motion to Reconsider

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp

United States Magistrate Judge